1
2
3
4
5
6
7
8               **UNITED STATES DISTRICT COURT**

9               **CENTRAL DISTRICT OF CALIFORNIA**

10

11    ANNA NEAL NEGRETE,                    Case No. 2:20-CV-11124-JGB (MAA)

12                    Plaintiff,

13                                          **REPORT AND RECOMMENDATION**
                                            **OF UNITED STATES MAGISTRATE**
14        v.                                **JUDGE**

15    LOS ANGELES COUNTY et al.,

16                    Defendants.

17

18          This Report and Recommendation is submitted to the Honorable Jesus G.

19    Bernal pursuant to the provisions of 28 U.S.C. § 636 and General Order 05-07 of

20    the United States District Court for the Central District of California.

21    **I.      INTRODUCTION**

22          On December 7, 2020, Plaintiff Anna Neal Negrete ("Plaintiff"), proceeding

23    *pro se*, filed a Complaint alleging violations of her civil rights pursuant to 42 U.S.C.

24    § 1983 ("Section 1983").  (Compl., ECF No. 1.)  On December 10, 2020, the Court

25    granted Plaintiff's request to proceed *in forma pauperis*.  (ECF Nos. 2, 4.)  On

26    March 18, 2021, the Court screened and dismissed the Complaint with leave to

27    amend.  (Order Dismiss. Compl., ECF No. 12.)

28          On April 20, 2021, Plaintiff filed a First Amended Complaint ("FAC").

(FAC, ECF No. 13.)  On June 22, 2021, the Court issued an Order to Show Cause Why the Lawsuit Should Not Be Stayed Pursuant to *Younger* Abstention ("OSC"). (OSC, ECF No. 15.)  On August 5, 2021, the Court issued an Order Regarding Plaintiff's Failure to Reply to Court's Order to Show Cause.  (ECF No. 16.)  On September 22, 2021, Plaintiff filed an Answer to the OSC, stating that the underlying juvenile dependency case has been concluded as of September 13, 2021. (ECF No. 18.)  On January 14, 2022, the Court screened and dismissed the FAC with leave to amend.  (Order Dismiss. FAC, ECF No. 19.)

On March 4, 2022, Plaintiff filed a Second Amended Complaint ("SAC") against Los Angeles County (the "County") (by and through the Los Angeles County Department of Children and Family Services ("DCFS"), Los Angeles County Department of Mental Health ("DMH"), Kedren Acute Psychiatric Hospital & CMHC ("Kedren"), Los Angeles County Counsel ("LACC"), and Children's Law Center of California ("CLCC")[1]); Bobby Cagle, director of DCFS; Patricia Blaylock, a social worker at DCFS; Janet Nichols, a social worker at DCFS; Sharon Bateman, a social worker at DCFS; Verenice Salazar, a social worker at DCFS; Jonathan Willey, a social worker at DCFS; Vanty Vasquez, employee of Kedren under the direction of DMH; Ivette Torres, employee of Kedren under the direction of DMH; Robert Weiss, employed as minor's counsel by CLCC by and through the County; Melania Vartanian, County Counsel employed by CLCC by and through the County; and Dr. Matthew Wong, psychiatrist and contractor by and through Kedren, DMH, and the County (each, a "Defendant," and collectively, "Defendants").  (SAC ¶¶ 4–16, 107, ECF No. 20.)  The non-entity Defendants collectively are referred to as the "Individual Defendants."  For ease of understanding, the Individual Defendants are referred to with their titles—*i.e.*, the social workers are referred to as "S.W. [last name]," the attorneys are referred to as

---

[1] It is unclear whether Plaintiff alleges that CLCC is part of the County.  *See* SAC ¶¶ 13, 107.

"Attorney [last name]," the doctor is referred to as "Dr. [last name]," and Kedren employees are referred to as "Kedren's [last name]."

On April 15, 2022, the Court ordered the United States Marshal ("USM") to serve the SAC upon the County and Individual Defendants.  ("Service Orders," ECF Nos. 21–23.)  On June 21, 2022, the USM returned as unexecuted the service forms for Director Cagle, S.W. Bateman, Attorney Weiss, Attorney Vartanian, and Dr. Wong.[2]  (ECF Nos. 46–48, 53, 55.)

On June 8, 2022, the County filed a Joint Stipulation dismissing the County from claims one, two, four, and five ("Stipulation").  (Stip., ECF No. 26.)  The County also filed a Notice of Motion to Dismiss (ECF No. 28), supported by a Memorandum of Points and Authorities ("County Motion" ECF Nos. 39-1, 42) and Request for Judicial Notice ("RJN," ECF No. 38-3, 39-2).

On June 13, 2022, S.W. Salazar, S.W. Blaylock, S.W. Nichols, S.W. Willey, and Attorney Vartanian (collectively, "County Employees") filed a Notice of Motion to Dismiss (ECF No. 35), supported by a Memorandum of Points and Authorities ("Employees Motion," ECF No. 35-1).[3]  County Employees also filed a Joinder in the County Motion and RJN.  (ECF No. 36.)

On July 13, 2022, Plaintiff filed two Oppositions to the Motions, without specifying which Opposition was directed towards which Motion.  ("First Opposition," ECF No. 58; "Second Opposition," ECF No. 60.)  The County and County Employees (collectively, "County Defendants") filed Replies to Plaintiff's Oppositions.  ("First Reply," ECF No. 59; "Second Reply," ECF No. 61.)

---

[2] Unless and until any unserved defendants are served, they are not officially a party to this lawsuit.  *See Murphy Bros., Inc. v. Michetti Pipe Stringing, Inc.*, 526 U.S. 344, 350 (1999) ("[O]ne becomes a party officially, and is required to take action in that capacity, only upon service of a summons or other authority-asserting measure stating the time within which the party served must appear and defend.").

[3] The County Motion and Employees Motion each are sometimes referred to as a "Motion" and collectively are referred to as the "Motions."

The Motions are appropriate for resolution without a hearing.  *See* Fed. R. Civ. P. 78(b); C.D. Cal. L.R. 7-15.  For the reasons below, the Court recommends that the Motions be **GRANTED IN PART AND DENIED IN PART**.

**II.    REQUEST FOR JUDICIAL NOTICE**

The County asks the Court to take judicial notice of the following documents and facts:

1.   Certain documents and facts regarding Plaintiff's state court appeals of the underlying dependency case.

2.   Exhibit A: opinion of the California Second District Court of Appeal from Plaintiff's appeal from the judgment and orders of the state dependency court concerning N.W.N.  (ECF No. 39-4).

3.   "Plaintiff has previously litigated the issues discussed in the opinion, Exhibit A."

4.   "Kedren Community Health Center, Inc., is a California Domestic NonProfit Corporation, located at 4211 S. Avalon Blvd. Los Angeles California 90011.  It is a private hospital and is not owned or maintained by the County of Los Angeles."

5.   Exhibit B: SI-100 form for Kedren on file with the California Secretary of State (ECF No. 31-4).

(*See generally* RJN.)  Plaintiff does not oppose the RJN.  (*See generally* First Opp'n; Second Opp'n.)

Generally, district courts may not consider material outside the pleadings when assessing the sufficiency of a complaint under Rule 12(b)(6) of the Federal Rules of Civil Procedure ("Rule").  *Khoja v. Orexigen Therapeutics, Inc.*, 899 F.3d 988, 998 (9th Cir. 2018).  When matters outside the pleading are presented to and not excluded by the court, the Rule 12(b)(6) motion becomes a Rule 56 motion for summary judgment and both parties must have the opportunity to present all material pertinent to the motion.  *Id*.  "A court may, however, consider certain

materials—documents attached to the complaint, documents incorporated by reference in the complaint, or matters of judicial notice—without converting the motion to dismiss into a motion for summary judgment." *United States v. Ritchie*, 342 F. 3d 903, 908 (9th Cir. 2003).

Federal Rule of Evidence 201 permits a court to take judicial notice of "a fact that is not subject to reasonable dispute because it: (1) is generally known within the trial court's territorial jurisdiction; or (2) can be accurately and readily determined from sources whose accuracy cannot reasonably be questioned." Fed. R. Evid. 201(b).  A court may take judicial notice of court filings and other matters of public record.  *See Reyn's Pasta Bella, LLC v. Visa USA, Inc.*, 442 F.3d 741, 750 n.6 (9th Cir. 2006).  But a court cannot take judicial notice of disputed facts contained in such public records.  *Khoja*, 899 F.3d at 999.

The County's RJN No. 2 asks the Court to take judicial notice of a California court of appeal decision, and RJN No. 5 asks the Court to take judicial notice of a public record from the California Secretary of State's website.  (RJN ¶¶ 2, 5.)  As these are public documents that can accurately and readily be determined from sources whose accuracy cannot reasonably be questioned, the District Court should **GRANT** the County's RJN Nos. 2 (Exhibit A) and 5 (Exhibit B).  *See* Fed. R. Evid. 201(b); *Holder v. Holder*, 305 F.3d 854, 866 (9th Cir. 2002) (taking judicial notice of state appellate court opinion and parties' briefs to analyze issue preclusion); *L'Garde, Inc. v. Raytheon Space & Airborne Sys.*, 805 F. Supp. 2d 932, 938 (C.D. Cal. 2011) (taking judicial notice of records from the California Secretary of State website).

The County's RJN No. 1 asks the Court to take judicial notice of Exhibit 8 to the SAC and that Plaintiff filed four appellate challenges to the dependency case, one of which the County will file as Exhibit A.  (RJN ¶ 1.)  The District Court should **DENY** the County's RJN No. 1 as unnecessary.  The request to take judicial notice of Exhibit 8 is redundant, as it is part of the SAC and already may be

considered here.  *See Ritchie*, 342 F. 3d at 908 (stating that a court may consider documents attached to the complaint without converting the motion to dismiss into a motion for summary judgment).  The fact that Plaintiff has filed four appellate challenges is unnecessary to the Court's determination of the Motions, unless County Defendants wish to assert a defense based upon those four appellate challenges.  *See Asvesta v. Petroutsas*, 580 F.3d 1000, 1030 n.12 (9th Cir. 2009) (denying request for judicial notice where judicial notice would be "unnecessary"). While County Defendants do assert issue preclusion as to the appellate opinion in Exhibit A, this request is redundant with RJN No. 2.  *See Urista v. Bank of Am., N.A.*, No. C11-03097 HRL, 2012 U.S. Dist. LEXIS 152, at *17 (N.D. Cal. Jan. 3, 2012) (denying request to take judicial notice of three previously judicially-noticed documents as "redundant").

The County's RJN No. 3 asks the Court to take judicial notice of the fact that "Plaintiff Negrete has previously litigated the issues discussed in the opinion, Exhibit A," and the County's RJN No. 4 asks the Court to take judicial notice of the fact that Kedren "is a private hospital and is not owned or maintained by the County of Los Angeles."  (RJN ¶¶ 3–4.)  As these statements are legal conclusions that are not the proper subject of judicial notice, the District Court should **DENY** the County's RJN Nos. 3 and 4.  *See* Fed. R. Evid. 201(b); *Klausner v. Lucas Film Entm't Co.*, No. 09-03502 CW, 2010 U.S. Dist. LEXIS 25944, at *4 (N.D. Cal. Mar. 19, 2010) (declining to take judicial notice of a legal conclusion).

## III.   ALLEGATIONS AND CLAIMS[4]

Plaintiff resided in Lancaster, California with N.W.N., her twelve-year old son with mental health needs.  (SAC ¶ 25.)  N.W.N. repeatedly left home without permission, resulting in incidents that involved police, social workers, and mental health hospitalizations.  (*Id*. ¶¶ 25–28.)

---

[4] The Court summarizes the allegations and claims in the SAC, without opining on their veracity or merit.

During one incident in October 2017, Plaintiff asked that N.W.N. be placed on a 72-hour mental health hold. (*Id.* ¶ 29.) N.W.N. was taken to Kedren, where Dr. Wong diagnosed N.W.N. with oppositional defiant disorder and disruptive mood dysregulation disorder. (*Id.*) An emergency social worker, Anna (who is not a Defendant), visited N.W.N. at Kedren. (*Id.* ¶ 30.) Upon discharge, Plaintiff picked N.W.N. up from Kedren on October 31, 2017 and took him home. (*Id.*) Anna visited N.W.N. at home after his discharge, at which time N.W.N. accused Plaintiff of abuse. (*Id.*) After investigation, Anna closed the case and left N.W.N. at home. (*Id.*) A few months passed without incident. (*Id.* ¶ 31.)

On February 13, 2018, N.W.N. ran away and was brought home by police. (*Id.* ¶¶ 37–38.) Plaintiff had N.W.N. examined at the psychiatric ward at Antelope Valley Hospital. (*Id.* ¶ 38.) After the examination, the charge nurse asked Plaintiff whether she would be picking him up or wanted him transferred to a children's facility. (*Id.* ¶ 39.) Plaintiff requested that N.W.N. be transferred to a children's facility other than Kedren, but he was transferred to Kedren. (*Id.* ¶¶ 39–40.)

At Kedren, S.W. Salazar interviewed N.W.N. without a warrant, Plaintiff's consent or presence, or legal counsel. (*Id.* ¶ 41.) Kedren's Vasquez and Torres assured S.W. Salazar that N.W.N. would not be discharged and that Dr. Wong would place him on an involuntary hold. (*Id.* ¶ 42.) S.W. Salazar met with N.W.N. to "nudge him" into what to say. (*Id.* ¶ 43.)

S.W. Salazar went to Plaintiff's house unannounced for a nighttime interview and told Plaintiff not to visit N.W.N. at the hospital. (*Id.*) Plaintiff went to Kedren to deliver schoolwork and to sign N.W.N. in on a voluntary admission, but Kedren, Kedren's Vasquez and Torres, and S.W. Salazar already had placed N.W.N. into an involuntary hold. (*Id.* ¶ 44.) DCFS, DMH, Kedren, and Kedren's Vasquez and Torres regularly place voluntarily-admitted children into involuntary status, in order to remove them from their parents. (*Id.* ¶ 50.)

While Plaintiff was en route to Kedren to attend the hearing with the judge,

7

S.W. Salazar called Plaintiff to ask if Plaintiff would be attending the hearing.  (*Id.* ¶ 45.)  When Plaintiff said yes, S.W. Salazar called Kedren's Vasquez and Torres and told them to tell N.W.N. to say that he was afraid of Plaintiff and did not want her at the hearing.  (*Id.*)  S.W. Salazar and Kedren's Vasquez and Torres coached and manipulated N.W.N. on what to say, to carry out their plan to remove N.W.N. from Plaintiff.  (*Id.* ¶ 62.)  DCFS, S.W. Salazar, Kedren's Vasquez and Torres, Kedren, and DMH performed a warrantless search and seizure in investigating and removing N.W.N. when they did not permit Plaintiff to visit N.W.N. while he was hospitalized and still lawfully under her care and supervision.  (*Id.*)

S.W. Salazar and Kedren's Vasquez and Torres "bullied" Dr. Wong into keeping N.W.N. in the hospital without a legitimate psychiatric reason.  (*Id.* ¶ 46.)  When Plaintiff spoke with Dr. Wong about her concerns regarding N.W.N.'s release, Dr. Wong told her to "talk to the social workers."  (*Id.*)  Dr. Wong resigned his position immediately following N.W.N.'s detention.  (*Id.* ¶ 51.)  Dr. Wong agreed with Plaintiff that "there was something not quite adding up with N.W.N."  (*Id.*)  Later, Dr. Wong signed a letter stating that N.W.N. could benefit from being placed in a residential treatment facility.  (*Id.*)

S.W. Salazar came to Plaintiff's house unannounced and falsely accused Plaintiff of checking N.W.N. out of Kedren against medical advice after his October 2017 stay.  (*Id.* ¶ 48.)  Plaintiff offered to show the discharge papers, but S.W. Salazar declined.  (*Id.*)  S.W. Salazar stated that she could not trust that Plaintiff would not check N.W.N. out of a residential treatment program.  (*Id.*)

The night before N.W.N. would have been released from Kedren, Plaintiff completed the process to transfer N.W.N. to a residential facility.  (*Id.* ¶ 49.)  S.W. Salazar went to court and made false statements to obtain a warrant for removal.  (*Id.*)  Although S.W. Salazar knew that the allegations were unsubstantiated and that N.W.N.'s statements were unsubstantiated, DCFS through S.W. Salazar drafted a petition stating that they found negligence allegations to be true and signed under

penalty of perjury that the contents of the petition were true.  (*Id*. ¶ 52.)  The juvenile court made orders based on S.W. Salazar's report, which was inaccurate, incomplete, and intentionally withheld exculpatory information.  (*Id*. ¶ 53.)  S.W. Salazar falsely represented to the court that N.W.N. was suicidal, that Plaintiff previously removed N.W.N. from the hospital against medical advice, that Plaintiff neglected N.W.N.'s medical needs, and that Plaintiff repeatedly pushed N.W.N. into the thermostat causing his skin to tear and leaving a dime-sized scar on his left shoulder.  (*Id*. ¶¶ 49, 56.)  The detention report omitted several exculpatory or mitigating facts—including N.W.N.'s previous contradictory statements and police statements—and also buried pertinent facts in its density.  (*Id*. ¶ 55.)  It is regular practice for DCFS to exaggerate or make up information in detention reports to guarantee that the juvenile court keeps the child.  (*Id*. ¶ 54.)

S.W. Salazar knew that Plaintiff was scheduled to have surgery on the date of the initial jurisdiction hearing, but did nothing to assist the court or Plaintiff to enable her to attend on a different date.  (*Id*. ¶ 58.)  A few days after Plaintiff's surgery, while Plaintiff was still on bed rest and pain medication, S.W. Salazar showed up to Plaintiff's home unannounced.  (*Id*. ¶ 59.)  S.W. Salazar tried to force Plaintiff to sign a voluntary plan with fabrications and inaccuracies while Plaintiff was on medication.  (*Id*.)  Plaintiff said she would only sign receipt of the document and requested a few days to review it.  (*Id*.)

S.W. Salazar referred Plaintiff to the Sheriff's Department on "bogus charges"; S.W. Blaylock, S.W. Willey, and DCFS provided permission and ratification of the referral. (*Id*. ¶ 61.)  Plaintiff was interrogated at the police station and in her home.  (*Id*.)  The District Attorney rejected the case.  (*Id*.)

S.W. Bateman visited Plaintiff at home.  (*Id*. ¶ 63.)  Plaintiff told S.W. Bateman that she would be bringing a civil action against S.W. Salazar.  (*Id*.)  S.W. Bateman relayed this information to her supervisor, S.W. Blaylock.  (*Id*.)

S.W. Bateman deprived Plaintiff of court-ordered visitation on numerous

occasions by canceling visits and refusing to grant Plaintiff the full three-hour court-ordered visits. (*Id*. ¶ 64.) S.W. Bateman and S.W. Salazar coached N.W.N. that they could not force him to "get in the car"; S.W. Nichols also used this same phrase with N.W.N. (*Id*.)

S.W. Bateman intentionally failed to provide accurate and truthful reports, omitting the affection shown between N.W.N. and Plaintiff, misrepresenting N.W.N.'s emotions, and attaching labels that would make Plaintiff appear to have done something wrong. (*Id*. ¶ 65.) S.W. Bateman also failed to provide an accurate report to the court of why N.W.N. was being moved from his placement: that he had assaulted a younger, smaller child in the house. (*Id*. ¶ 66.)

S.W. Bateman, DCFS, and S.W. Blaylock deprived Plaintiff of the right to be present during N.W.N.'s psychiatric panel at UCLA. (*Id*. ¶ 67.) S.W. Bateman gave the order, and S.W. Blaylock ratified it. (*Id*.)

After being confronted about untruths and omissions in the social workers' reports, S.W. Blaylock and S.W. Nichols stated that S.W. Willey had altered or fabricated the information in the reports. (*Id*. ¶ 68.) But Plaintiff knows that S.W. Blaylock altered some of the documents herself, including in front of Plaintiff during a May 2019 meeting. (*Id*.)

Director Cagle acquiesced, ratified, and approved all these actions, as his signature can be found on virtually every document provided by DCFS employees. (*Id*. ¶ 69.)

N.W.N. told S.W. Nichols, his therapist (Tyeast Brown of Pathways), and caregiver that he agreed to go back to Plaintiff's home. (*Id*. ¶ 74.) But a few days before the hearing, Attorney Weiss met with N.W.N. and convinced him to change his mind. (*Id*.) Attorney Weiss took out his anger and personal bias against Plaintiff. (*Id*.)

During the adjudication hearing, Attorney Weiss allowed his client N.W.N. to testify untruthfully under penalty of perjury. (*Id*. ¶ 70.) Attorney Weiss

misrepresented to the juvenile court that N.W.N. was having no problems in his foster home, although he knew N.W.N. had been physically threatening towards his caregiver and her family. (*Id*. ¶ 72.) Attorney Weiss also made several outbursts during the course of the dependency case that were personal attacks on Plaintiff, including that Plaintiff was "torturing" N.W.N. by continuing to fight for reunification. (*Id*. ¶ 73.) CLCC ratified and acquiesced in Attorney Weiss's conduct by refusing to remove him from the case. (*Id*. ¶ 74.)

During the disposition hearing, Attorney Vartanian untruthfully stated that Plaintiff should not get her son back because Plaintiff checked N.W.N. out of the hospital against medical advice. (*Id*. ¶ 76.) This evidence impacted the appellate ruling. (*Id*.) Throughout the case, Attorney Vartanian advised her client to take actions against Plaintiff because she disliked that Plaintiff was "strict." (*Id*. ¶ 77.)

In its ruling, the juvenile court found allegations of physical abuse, negligence, and failure to protect to be untrue. (*Id*. ¶ 71.) The court further found that Plaintiff could not control N.W.N., which placed him at substantial risk of harm. (*Id*.) Plaintiff appealed this portion of the ruling. (*Id*.) Attorney Weiss augmented the record on appeal without leave of the court. (*Id*.)

When the reunification plan was presented after the disposition hearing, Plaintiff completed a twenty-four hour parenting course online and presented the completion certificate. (*Id*. ¶ 77.) S.W. Nichols and S.W. Blaylock told Plaintiff that, according to Attorney Vartanian, in-person attendance was mandatory. (*Id*.) Due to pain from prolonged sitting, Plaintiff requested an ADA accommodation. (*Id*.) According to S.W. Nichols and S.W. Blaylock, Attorney Vartanian insisted that Plaintiff not be given credit for the online course. (*Id*.) S.W. Blaylock and S.W. Nichols did not provide Plaintiff information regarding the parenting classes or a list of resources for Kern County, and waited until it was impossible for Plaintiff to complete the course before the hearing. (*Id*. ¶ 90.)

S.W. Blaylock and S.W. Nichols met with Plaintiff after the adjudication and

disposition hearings.  (*Id*. ¶ 79.)  Plaintiff emailed a list of concerns regarding N.W.N. and his current care and placement.  (*Id*.)  Plaintiff repeatedly requested to be present at all of N.W.N.'s medical appointments, but S.W. Blaylock, S.W. Nichols, S.W. Bateman, and the caregiver did not honor those requests related to psychiatric appointments for over a year and a half, and never advised Plaintiff of any medical, eye, or dental appointments.  (*Id*.)

Attorney Weiss, S.W. Bateman, S.W. Nichols, and S.W. Blaylock interfered with Plaintiff's right to educate N.W.N.  (*Id*. ¶ 83.)  Since Plaintiff was seven, his dream was to play football at UCLA.  (*Id*. ¶ 80.)  While at home with Plaintiff and her spouse, N.W.N. maintained a B average.  (*Id*. ¶ 81.)  Once N.W.N. was admitted into Kedren, he spent most of the day playing and watching television. (*Id*.)  After his release, he no longer wanted to do schoolwork.  (*Id*.)  Attorney Weiss, S.W. Bateman, S.W. Nichols, and S.W. Blaylock did not believe N.W.N. was capable of achieving his goal, failed to continue N.W.N.'s curriculum, and failed to place him with a caregiver who could help him with his homework.  (*Id*. ¶¶ 82–84.)  N.W.N.'s GPA fell from a B average to less than 2.0, and he finished middle school without the prerequisites for high school.  (*Id*. at ¶ 84.)

Plaintiff requested that N.W.N. repeat the eighth grade and discussed this with the middle school principal.  (*Id*. ¶ 85.)  After speaking with S.W. Nichols, the principal was asked to write a letter to the court.  (*Id*.)  Plaintiff did not receive a copy of the letter, but S.W. Nichols's report summarized the letter as stating that Plaintiff bullied the principal.  (*Id*.)  Recently, Plaintiff learned that the principal's letter did not say this.  (*Id*.)

Plaintiff and her spouse met with S.W. Nichols and S.W. Blaylock to discuss accountability and that there should be consequences for N.W.N.'s failure to submit nearly sixty-five assignments during the schoolyear.  (*Id*. ¶ 86.)  S.W. Blaylock suggested that N.W.N. not be permitted to participate in the graduation ceremony, and S.W. Nichols suggested that the entire team tell N.W.N. together  (*Id*.)  At the

meeting, however, S.W. Nichols and S.W. Blaylock acted as if they had never made the suggestion, and N.W.N. became more distant from Plaintiff.  (*Id*.)  N.W.N. was permitted to walk in the ceremony and Plaintiff was not invited.  (*Id*. ¶ 87.)

N.W.N. has regressed severely since he was taken from Plaintiff's home.  (*Id*. ¶ 92.)  N.W.N. currently is failing most of his tenth grade classes, is failing to attend classes online, and is not completing his assignments.  (*Id*. ¶ 87.)  N.W.N.'s caregiver's home is not certified, she has not been properly trained to supervise N.W.N., and she has requested that N.W.N. be removed due to his recent threats of violence.  (*Id*. ¶ 92.)  N.W.N. has stolen nearly $500 from his caregiver and over $1,100 from Plaintiff and her spouse to play video games.  (*Id*.)  N.W.N. is unrecognizable now in both his appearance and disposition.  (*Id*.)  N.W.N. is not the same as when he went into the system, and Defendants have caused Plaintiff to lose familial association with him.  (*Id*.)

Plaintiff recently learned that S.W. Blaylock and S.W. Nichols were advised that Plaintiff had filed a claim against them with the Los Angeles County Board of Supervisors.  (*Id*. ¶ 94.)  At that time, S.W. Nichols, with the ratification and permission of S.W. Blaylock, sought to file additional charges against Plaintiff "if it would help" fight the claim against S.W. Nichols, but the proposed charge had already been defeated.  (*Id*.)  Instead of recusal, S.W. Nichols began to sabotage Plaintiff's reunification with N.W.N. by refusing to discuss the reunification plan. (*Id*.)  S.W. Nichols stated on video that Plaintiff had completed all requirements for reunification but still would not get her son back.  (*Id*. ¶ 95.)  S.W. Blaylock and S.W. Nichols falsely represented during a hearing that the caregiver wants to be a permanent caregiver for N.W.N.  (*Id*. ¶ 96.)

The County, its social workers, and lawyers deploy a custom, policy and/or practice of fraudulently charging parents with child abuse or neglect where none exists.  (*Id*. ¶ 98.)  DCFS has begun a custom, policy, and/or practice of these fraudulent charges against parents because it has been audited and discovered to

have had multiple children die due to the County's failure to protect children.  (*Id.* ¶ 99.)  Therefore, the County has adopted a policy of "Foster Care Panic where it takes a majority of the children it comes into contact with out of fear." (*Id.*)  It is a policy and practice of Kedren to place children in its care on involuntary holds and allow DCFS to visit to obtain evidence when there is no emergency.  (*Id.* ¶ 98.)

Based on the foregoing, Plaintiff asserts the following five claims:

- First claim: Section 1983 First Amendment, use of deception and fabrication of evidence in judicial proceedings and loss of familial association (*id.* ¶¶ 102–117);

- Second claim: Section 1983 Fourth Amendment wrongful search and seizure (*id.* ¶¶ 118–123);

- Third claim: Section 1983 Fourteenth Amendment *Monell* claim (*id.* ¶¶ 124–132);

- Fourth claim: Section 1983 procedural and substantive due process (*id.* ¶¶ 133–139); and

- Fifth claim: intentional infliction of emotional distress (*id.* ¶¶ 140–144).

The SAC does not specify which claim is brought against which Defendant. (*See generally* SAC.)  After the parties' Stipulation dismissing the County from claims one, two, four, and five, the only claim remaining against the County is the third claim for liability pursuant to *Monell*.  (Stip.)

Plaintiff seeks compensatory, special, general, and punitive damages; prejudgment interest; civil penalties; cost and reasonable attorneys' fees; and such other relief as the Court may deem fit and proper.  (*Id.* at 41–42.)[5]

## IV.  LEGAL STANDARDS

### A.  Motion to Dismiss for Lack of Jurisdiction

A party may bring a motion to dismiss under Rule 12(b)(1) for lack of subject

---

[5] Citations to page numbers in docketed documents reference those generated by the CM/ECF headers.

matter jurisdiction.  *See* Fed. R. Civ. P. 12(b)(1).  "Subject matter jurisdiction defines the court's authority to hear a given type of case."  *Seismic Reservoir 2020, Inc. v. Paulsson*, 785 F.3d 330, 333 (9th Cir. 2015) (quoting *Carlsbad Tech., Inc. v. HIF Bio, Inc.*, 556 U.S. 635, 639 (2009)).  A Rule 12(b)(1) jurisdictional attack may be facial or factual.  *White v. Lee*, 227 F.3d 1214, 1242 (9th Cir. 2000).  "In a facial attack, the challenger asserts that the allegations contained in a complaint are insufficient on their face to invoke federal jurisdiction."  *Safe Air for Everyone v. Meyer*, 373 F.3d 1035, 1039 (9th Cir. 2004).  "[I]n a factual attack, the challenger disputes the truth of the allegations that, by themselves, would otherwise invoke federal jurisdiction."  *Id*.  When a motion challenges subject matter jurisdiction on the face of the complaint, as here, the court assumes the factual allegations in the complaint are true and draws all reasonable inferences in the plaintiff's favor.  *See Doe v. Holy See*, 557 F.3d 1066, 1073 (9th Cir. 2009).

**B.    Motion to Dismiss for Failure to State a Claim**

Rule 8(a)(2) requires that a complaint contain "'a short and plain statement of the claim showing that the pleader is entitled to relief,' in order to 'give the defendant fair notice of what the . . . claim is and the grounds upon which it rests.'" *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (alteration in original) (quoting *Conley v. Gibson*, 355 U.S. 41, 47 (1957)).  "Each allegation must be simple, concise, and direct."  Fed. R. Civ. P. 8(d)(1).  While Rule 8 "does not require 'detailed factual allegations,' . . . it demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation."  *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Twombly*, 550 U.S. at 555).  "A pleading that offers 'labels and conclusions' or 'a formulaic recitation of the elements of a cause of action will not do.'  Nor does a complaint suffice if it tenders 'naked assertion[s]' devoid of 'further factual enhancement.'"  *Id.* (quoting *Twombly*, 550 U.S. at 555, 557).

A motion to dismiss under Rule 12(b)(6) "tests the legal sufficiency of the claims asserted in the complaint."  *Ileto v. Glock*, 349 F.3d 1191, 1199–1200 (9th

Cir. 2003).  "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'"  *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 570).  "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."  *Id*.  In reviewing a motion to dismiss, courts will accept factual allegations as true and view them in the light most favorable to the plaintiff.  *Park v. Thompson*, 851 F.3d 910, 918 (9th Cir. 2017).  Moreover, where a plaintiff is appearing *pro se*, particularly in civil rights cases, courts construe pleadings liberally and afford the plaintiff the benefit of any doubt.  *Wilhelm v. Rotman*, 680 F.3d 1113, 1121 (9th Cir. 2012).  However, courts will not "accept any unreasonable inferences or assume the truth of legal conclusions cast in the form of factual allegations."  *Ileto v. Glock Inc.,* 349 F.3d 1191, 1200 (9th Cir. 2003).

"A claim may be dismissed under Rule 12(b)(6) on the ground that it is barred by the applicable statute of limitations only when 'the running of the statute is apparent on the face of the complaint.'"  *Von Saher v. Norton Simon Museum of Art at Pasadena*, 592 F.3d 954, 969 (9th Cir. 2010) (quoting *Huynh v. Chase Manhattan Bank*, 465 F.3d 992, 997 (9th Cir. 2006)).  "[A] complaint cannot be dismissed unless it appears beyond doubt that the plaintiff can prove no set of facts that would establish the timeliness of the claim."  *Id*. (alteration in original) (quoting *Supermail Cargo, Inc. v. U.S*., 68 F.3d 1204, 1206 (9th Cir. 1995)).

## C.    *In Forma Pauperis* Dismissal for Failure to State a Claim

28 U.S.C. § 1915(e)(2)(B)(ii) ("Section 1915(e)(2)(B)(ii)") mandates that for any action in which a plaintiff proceeds *in forma pauperis*, "the court shall dismiss the case at any time if the court determines that . . . the action . . . fails to state a claim on which relief may be granted[.]"  28 U.S.C. § 1915(e)(2)(B)(ii); *see also Lopez v. Smith*, 203 F.3d 1122, 1129 (9th Cir. 2000) ("[S]ection 1915(e) applies to all in forma pauperis complaints, not just those filed by prisoners.").  The duty

imposed by Section 1915(e)(2)(B)(ii) is "mandatory." *See O'Neal v. Price*, 531 F.3d 1146, 1153 (9th Cir. 2008); *see also Lopez*, 203 F.3d at 1127 ("It is . . . clear that section 1915(e) not only permits but requires a district court to dismiss an in forma pauperis complaint that fails to state a claim.").  The standard for determining whether a plaintiff has failed to state a claim under Section 1915(e)(2)(B)(ii) is the same as the Rule 12(b)(6) standard.  *See Watison v. Carter*, 668 F.3d 1108, 1112 (9th Cir. 2012).  However, even if a Rule 12(b)(6) motion is filed, that does not relieve a district court of its duty to dismiss an *in forma pauperis* complaint for failure to state a claim.  *See Lopez*, 203 F.3d at 1143 n.6.

## V.   DISCUSSION

### A.   Law-of-the-Case Doctrine

As a preliminary matter, Plaintiff argues that because the Court previously screened the pleadings, the Motions should be denied pursuant to the law-of-the-case doctrine.  (First Opp'n 13–17; Second Opp'n 14–17.)  Specifically, Plaintiff argues that the Court previously determined—and Defendants are bound by—the Court's previous determination that the SAC stated a claim and the Court's previous rulings on the *Rooker-Feldman* doctrine, issue preclusion, and Rule 8.  (First Opp'n 13–17; Second Opp'n 14–17.)  County Defendants argue that the law-of-the-case doctrine does not bar an additional screening by the Court based on new evidence, provided by Plaintiff herself.  (First Reply 6–8.)

"The law of the case doctrine is a judicial invention designed to aid in the efficient operation of court affairs." *Lower Elwha Band of S'Klallams v. Lummi Indian Tribe*, 235 F.3d 443, 452 (9th Cir. 2000) (quoting *Milgard Tempering, Inc. v. Selas Corp. of Am.*, 902 F.2d 703, 715 (9th Cir. 1990)).  "Under the law of the case doctrine, 'a court is generally precluded from reconsidering an issue previously decided by the same court, or a higher court in the identical case.'" *Ingle v. Circuit City*, 408 F.3d 592, 594 (9th Cir. 2005) (quoting *Lower Elwha Band*, 235 F.3d at 452).  Application of the law-of-the-case doctrine is discretionary. *Lower Elwha*

*Band*, 235 F.3d at 452.  "A district court abuses its discretion in applying the law of the case doctrine only if (1) the first decision was clearly erroneous; (2) an intervening change in the law occurred; (3) the evidence on remand was substantially different; (4) other changed circumstances exist; or (5) a manifest injustice would otherwise result."  *Ingle*, 408 F.3d at 594.

Under Section 1915(e)(2)(B)(ii)'s mandate, the Court reviewed and dismissed the Complaint and FAC with leave to amend, and ordered that the SAC be served upon the County and Individual Defendants.  (*See* Order Dismiss. Compl.; Order Dismiss. FAC; Service Orders.)  While the standard for determining whether a plaintiff has failed to state a claim under Section 1915(e)(2)(B)(ii) is the same as the Rule 12(b)(6) standard, *see Watison*, 668 F.3d at 1112, the Court recommends that the District Court decline its discretion to apply the law-of-the-case doctrine to the screening orders.

As an initial matter, contrary to Plaintiff's arguments (*see* First Opp'n 16; Second Opp'n 16), the law-of-the-case doctrine is not potentially applicable to the issues of *Rooker-Feldman* and issue preclusion.  While the Court warned Plaintiff regarding the *Rooker-Feldman* doctrine, the Court never concluded whether or not such doctrine bars subject matter jurisdiction of Plaintiff's claims.  (*See* Order Dismiss. Compl. 6–7; Order Dismiss. FAC 5.)  In addition, the Court never mentioned issue preclusion in its screening orders.  (*See generally* Order Dismiss. Compl.; Order Dismiss. FAC.)  Because the Court never ruled upon the applicability of *Rooker-Feldman* and issue preclusion, the law-of-the-case doctrine cannot bar these issues.  *See Ingle*, 408 F.3d at 594 (stating that the law-of-the-case doctrine applies to issues previously decided by the same court).

As to the remaining arguments in the Motions, some unpublished district court cases have concluded, as Plaintiff argues, that a motion to dismiss following a screening implicates the law-of-the-case doctrine.  *See, e.g.*, *Wilhelm v. Rotman*, No. 1:10-cv-00001 DLB PC, 2014 U.S. Dist. LEXIS 150750, at *2 (E.D. Cal. Oct.

18

23, 2014) ("If Defendant, in a case which has been screened, believes there is a good faith basis for revisiting a prior determination made in a screening order, he must identify the basis for his motion, be it error, an intervening change in the law, or some other recognized exception to the law of the case doctrine."). *But see, e.g., Baldhosky v. Hubbard*, No. 1:12-cv-01200-LJO-MJS (PC), 2017 U.S. Dist. LEXIS 1770, at *3–5 (E.D. Cal. Jan. 5, 2017) (collecting cases regarding the differing approaches to the law-of-the-case doctrine following a screening, but ultimately concluding that defendants have a procedural right to bring a 12(b)(6) motion notwithstanding previous screening of the complaint). However, the Court is persuaded by the district court's well-reasoned analysis and conclusion in *Teahan v. Wilhelm*, 481 F. Supp. 2d 1115, 1118–20 (S.D. Cal. 2007) that—based upon, *inter alia*, the statutory language of Section 1915(e)(2)(B)(ii) (which provides that the court's power to *sua sponte* dismiss a complaint may be invoked "at any time" the court finds that the plaintiff has failed to state a claim), case law precedent, and "basic fairness"—"[t]he sua sponte screening and dismissal procedure is cumulative of, not a substitute for, any subsequent Rule 12(b)(6) motion that the defendant may choose to bring." *See also Norsworthy v. Beard*, 87 F. Supp. 3d 1104, 1122 n.4 (N.D. Cal. 2015) ("The issuance of a screening order . . . finding that [plaintiff] has stated a cognizable claim does not foreclose Defendants from moving to dismiss the complaint."); *Singleton v. Gates*, No. 2:19-cv-08908-RGK-JC, 2021 U.S. Dist. LEXIS 127696, at *21 n.1 (C.D. Cal. May 17, 2021) ("Notwithstanding the previously assigned Magistrate Judge's determinations relative to the Original Complaint, defendants were still entitled to pursue a motion to dismiss and the Court still had discretion to grant it."); *Baldhosky*, 2017 U.S. Dist. LEXIS 1770, at *4–5 ("Although motions to dismiss that follow screening orders frequently require the Court to repeat—often verbatim—analysis set forth in the screening order, the Court agrees that Defendants nonetheless have a procedural right to bring such a motion and to have their arguments considered by the District Judge. Accordingly,

the Court will evaluate the motion on the merits under the standards applicable under Rule 12(b)(6)."); *Green v. McKaskle*, 788 F.2d 1116, 1120 (5th Cir. 1986) ("We emphasize the uniqueness of a § 1915(d) determination. It is not to be confused with determinations made under the Federal Rules."). Moreover, when the Court conducted its previous screenings, it did so without the benefit of briefing from both Plaintiff and County Defendants, which has aided the Court in understanding Plaintiff's claims and its assessment of whether the SAC sufficiently states such claims. *See Teahan*, 481 F. Supp. 2d at 1120 (stating that another reason to allow defendants to file a motion to dismiss following a court's screening is that "[a]t the time of the initial screening, the complaint was liberally construed without the benefit of briefing from Defendants").

The District Court should **OVERRULE** Plaintiff's law-of-the-case-doctrine objection.

### B.   *Rooker-Feldman* **Doctrine**

County Employees argue that this case is barred by the *Rooker-Feldman* doctrine because it is a re-litigation of issues raised and rejected in the dependency court and on state court appeal. (Employees Mot. 11–12.) Plaintiff counters that she is not seeking appellate review of the state dependency orders and is not asking the Court to rule on custody in this action. (Second Opp'n 17.)

Because the *Rooker-Feldman* doctrine provides a jurisdictional ground for dismissal, the Court must address it first. *See Elwood v. Drescher*, 456 F.3d 943, 948 (9th Cir. 2006) ("*Rooker-Feldman* provides a jurisdictional ground for dismissal, and federal courts must generally address jurisdictional issues first . . . ."). Although this issue was raised only by County Employees, the Court *sua sponte* examines whether the *Rooker-Feldman* doctrine precludes Plaintiff's claims against all Defendants. *See Symantec Corp. v. Glob. Impact, Inc.*, 559 F.3d 922, 923 (9th Cir. 2009) (stating that a federal court has a duty to consider jurisdiction *sua sponte*); *Silverton v. Dep't of Treasury*, 644 F.2d 1341, 1345 (9th Cir. 1981)

20

("A District Court may properly on its own motion dismiss an action as to defendants who have not moved to dismiss where such defendants are in a position similar to that of moving defendants or where claims against such defendants are integrally related.").

The *Rooker-Feldman* doctrine derives its name from two Supreme Court cases: *Rooker v. Fidelity Trust Co.*, 263 U.S. 413 (1923) and *District of Columbia Court of Appeals v. Feldman*, 460 U.S. 462 (1983). *Doe v. Mann*, 415 F.3d 1038, 1041 (9th Cir. 2005). "[U]nder *Rooker-Feldman*, a federal district court is without subject matter jurisdiction to hear an appeal from the judgment of a state court." *Id.* (quoting *Bianchi v. Rylaarsdam*, 334 F.3d 895, 896 (9th Cir. 2003)). The *Rooker-Feldman* doctrine "is confined to . . . cases brought by state-court losers complaining of injuries caused by state-court judgments rendered before the district court proceedings commenced and inviting district court review and rejection of those judgments." *Exxon Mobil Corp. v. Saudi Basic Indus. Corp.*, 544 U.S. 280, 284 (2005). "At its core, the *Rooker-Feldman* doctrine stands for the unremarkable proposition that federal district courts are courts of original, not appellate, jurisdiction." *In re Gruntz*, 202 F.3d 1074, 1078 (9th Cir. 2000) (citing 28 U.S.C. §§ 1331, 1332). "Absent express statutory authorization, only the Supreme Court has jurisdiction to reverse or modify a state court judgment." *Henrichs v. Valley View Dev.*, 474 F.3d 609, 613 (9th Cir. 2007). The *Rooker-Feldman* doctrine is "fairly narrow, . . . separate and distinct from res judicata and collateral estoppel." *Carmona v. Carmona*, 603 F.3d 1041, 1050 (9th Cir. 2010).

To determine whether the *Rooker-Feldman* doctrine applies to bar subject matter jurisdiction, a district court first must determine whether the action contains a forbidden de facto appeal of a state court decision. *See Noel v. Hall*, 341 F.3d 1148, 1158 (9th Cir. 2003). "To determine whether an action functions as a de facto appeal, [courts] 'pay close attention to the *relief* sought by the federal-court plaintiff.'" *Cooper v. Ramos*, 704 F.3d 772, 777–78 (9th Cir. 2012) (quoting

*Bianchi*, 334 F.3d at 900).  "A suit brought in federal district court is a 'de facto appeal' forbidden by *Rooker-Feldman* when 'a federal plaintiff asserts as a legal wrong an allegedly erroneous decision by a state court, and seeks relief from a state court judgment based on that decision.'"  *Carmona*, 603 F.3d at 1050 (quoting *Noel*, 341 F.3d at 1164).  "In contrast, if a plaintiff 'asserts as a legal wrong an allegedly illegal act or omission by an adverse party, *Rooker-Feldman* does not bar jurisdiction.'"  *Id.* (quoting *Noel*, 341 F.3d at 1164).

If a lawsuit contains a de facto appeal, a district court is barred from deciding not only the issues decided by the state court, but also any other issues that are "inextricably intertwined" with the state court's decision.  *See Noel*, 341 F.3d at 1158.  "A claim is inextricably intertwined with a state court judgment if the federal claim succeeds only to the extent that the state court wrongly decided the issues before it, or if the relief requested in the federal action would effectively reverse the state court decision or void its ruling."  *Fontana Empire Ctr., LLC v. City of Fontana*, 307 F.3d 987, 992 (9th Cir. 2002) (internal quotation marks and citations omitted).  The "inextricably intertwined" inquiry is a "second and distinct step in the *Rooker-Feldman* analysis."  *Bell v. City of Boise*, 709 F.3d 890, 897 (9th Cir. 2013).  "Should the action *not* contain a forbidden de facto appeal, the *Rooker-Feldman* inquiry ends."  *Id*.

Here, County Employees' briefing on *Rooker-Feldman* is short (less than one page) and appears to confuse *Rooker-Feldman* with issue preclusion.  (*See* Employees Mot. 11–12.)  Rather than point out an injury caused by a state court decision, County Employees argue that this action re-litigates unspecified issues raised and rejected in the dependency court and on state court appeal.  (*Id*.)  The *Rooker-Feldman* doctrine, however, does not apply simply because two lawsuits involve the same facts and issues.  *See Kougasian v. TMSL, Inc.*, 359 F.3d 1136, 1142 (9th Cir. 2004) ("It is true that factual allegations and legal claims in these four causes of action are almost identical to the allegations and claims asserted in state

court in Kougasian I and II, but that is not sufficient reason to find the causes of action barred by *Rooker-Feldman*.").  *Rooker-Feldman* bars jurisdiction only where a state court loser complains of legal wrongs allegedly committed by the state court and seeks relief from a judgment of that court.  *See Noel*, 341 F.3d at 1163.

Plaintiff does not assert as a legal wrong an allegedly erroneous decision by a state court and does not seek relief from a state court judgment based on that decision; rather, Plaintiff complains of Defendants' acts and omissions leading up to and during the underlying state proceedings.  "A plaintiff alleging extrinsic fraud on a state court is not alleging a legal error by the state court; rather, he or she is alleging a wrongful act by the adverse party." *Kougasian*, 359 F.3d at 1040–41.  "[W]here the federal plaintiff does not complain of a legal injury caused by a state court judgment, but rather of a legal injury caused by an adverse party, *Rooker–Feldman* does not bar jurisdiction." *Noel*, 341 F.3d at 1163.  "The [*Rooker-Feldman*] doctrine applies when the federal plaintiff's claim arises from the state court judgment, not simply when a party fails to obtain relief in state court.  Preclusion, not *Rooker-Feldman*, applies when a federal plaintiff complains of an injury that was not caused by the state court, but which the state court has previously failed to rectify." *Henrichs*, 474 F.3d at 613–14 (quotation marks and citations omitted); *see also Noel*, 341 F.3d at 1164 ("The *Rooker-Feldman* doctrine asks: is the federal plaintiff seeking to set aside a state judgment, or does he present some independent claim, albeit one that denies a legal conclusion that a state court has reached in a case to which he was a party?  If the former, then the district court lacks jurisdiction; if the latter, then there is jurisdiction and state law determines whether the defendant prevails under principles of preclusion." (quoting *GASH Assocs. v. Village of Rosemont*, 995 F.2d 726, 728–29 (7th Cir. 1993)).  As Plaintiff is not seeking to set aside a state court judgment and does not complain of a legal injury caused by the state court, this action does not constitute a de facto appeal.  The Employees Motion to dismiss for lack of jurisdiction due to the *Rooker-*

*Feldman* doctrine should be **DENIED WITHOUT PREJUDICE**.

### C.    Statute of Limitations

The County and S.W. Salazar move to dismiss Plaintiff's claims against them as time-barred.  (County Mot. 14–15; Employees Mot. 12–13.)  The SAC contains two types of claims against the County and S.W. Salazar: federal Section 1983 claims against the County and S.W. Salazar, and a state law claim for intentional infliction of emotional distress against S.W. Salazar.  Plaintiff argues that the statute of limitations for these claims should be tolled because (1) she was not aware of the basis for her claims until she received S.W. Salazar's detention report in July 2019 as part of the official appellate record; and (2) the violations of Plaintiff's constitutional rights were continuing.  (First Opp'n 27–31; Second Opp'n 30–34.) County Defendants reply that, given the totality of the allegations in the SAC, Exhibit A, and the arguments and admissions in Plaintiff's Oppositions, Plaintiff knew in March 2018 that the removal of N.W.N. was wrongful and her claims accrued at that time.  (First Reply 9–10.)

Accrual is the date on which a statute of limitations begins to run.  *Lukovsky v. City & County of San Francisco*, 535 F.3d 1044, 1048 (9th Cir. 2008).  As to the Section 1983 claim, "[a]lthough state law determines the length of the limitations period, federal law determines when a civil rights claim accrues." *Knox v. Davis*, 260 F.3d 1009, 1013 (9th Cir. 2001) (quoting *Morales v. City of Los Angeles*, 214 F.3d 1151, 1153–54 (9th Cir. 2000)).  "[U]nder federal law, a claim accrues 'when the plaintiff knows or has reason to know of the injury which is the basis of the action.'" *Lukovsky*, 535 F.3d at 1048 (quoting *Olsen v. Idaho State Bd. of Med.*, 363 F.3d 916, 926 (9th Cir. 2004)).  As to the state law intentional infliction of emotional distress claim, a cause of action accrues in California at "the time when the cause of action is complete with all of its elements." *Fox v. Ethicon Endo-Surgery, Inc*., 35 Cal. 4th 797, 806 (2005) (quoting *Nogart v. Upjohn Co.*, 21 Cal. 4th 383, 397 (1999)).  Specifically, a cause of action for intentional infliction

of emotional distress accrues "once the plaintiff suffers severe emotional distress as a result of outrageous conduct on the part of the defendant." *Wassmann v. S. Orange Cnty. Cmty. Coll. Dist.*, 24 Cal. App. 5th 825, 853 (2018) (quoting *Cantu v. Resolution Trust Corp.*, 4 Cal. App. 4th 857, 889 (1992)).  "An important exception to the general rule of accrual is the 'discovery rule,' which postpones accrual of a cause of action until the plaintiff discovers, or has reason to discover, the cause of action." *Fox*, 35 Cal. 4th at 807.

The statute of limitations and tolling rules for both Section 1983 and intentional infliction of emotional distress claims are determined by California law. *See Lucchesi v. Bar-O Boys Ranch*, 353 F.3d 691, 694 (9th Cir. 2003) ("State law governs the statutes of limitations for section 1983 actions as well as questions regarding the tolling of such limitations periods."); *Centaur Classic Convertible Arbitrage Fund, Ltd. v. Countrywide Fin. Corp.*, 878 F. Supp. 2d 1009, 1015 (C.D. Cal. 2011) ("Federal courts addressing state law claims must apply state law statutes of limitation and state law applies to the question of tolling state claims."). For both the Section 1983 and intentional infliction of emotional distress claims, the applicable statute of limitations is California's two-year statute of limitations for personal injury actions.  *See* Cal. Code Civ. P. § 335.1; *Alameda Books, Inc. v. City of Los Angeles*, 631 F.3d 1031, 1041 (9th Cir. 2011) (Section 1983); *Kaldis v. Wells Fargo Bank, N.A.*, 263 F. Supp. 3d 856, 867 (C.D. Cal. 2017) (intentional infliction of emotional distress).  Due to the COVID-19 pandemic, the Judicial Council of California promulgated Emergency Rule 9, which "broadly" tolled any statutes of limitations for a civil cause of action that exceeds 180 days, from April 6, 2020 to October 1, 2020.  *See Palacios v. Interstate Hotels & Resorts Inc.*, No. 21-cv-05799-TSH, 2021 U.S. Dist. LEXIS 169334, at *6–7 (N.D. Cal. Sep. 7, 2021) (citing Judicial Council of Cal. Emergency Rule 9 & Advisory Committee Comment).

From the SAC and attached exhibits, the Court has gleaned the following

relevant alleged timeline:

- February 16, 2018: N.W.N.'s removal; S.W. Salazar first interviews N.W.N. at Kedren; S.W. Salazar and Kedren's Vasquez and Torres begin conspiracy (SAC ¶¶ 41, 105)
- March 5, 2018: counts entered against Plaintiff (*id*. 81–82, Ex. 6)
- May 6, 2019: adjudication hearing and order (*id*. 81–85, Ex. 6)
- September 6, 2019: Plaintiff's claim to the County (*id*. 87–88, Ex. 7)
- December 7, 2020: Plaintiff's instant lawsuit

The Court agrees with S.W. Salazar that the claims against her are based solely upon her actions leading up to N.W.N.'s detention hearing and preparation of a detention report for such hearing. (*See* Employees Mot. 12.) The Court also agrees with the County that the claim against it arises from the detention of N.W.N. (*see* County Mot. 12)—specifically, that the County has a policy, custom, or practice of "Foster Care Panic" where it allows fraudulent charges of child abuse or neglect to be instituted against parents (SAC ¶¶ 98–99). Although the SAC does not allege the date of the detention report, Plaintiff's Oppositions state that the detention report was filed with the juvenile court on March 3, 2018. (First Opp'n 10; Second Opp'n 10.) While the SAC does not allege the date of the detention hearing (*see generally* SAC), Plaintiff's Oppositions state that a hearing was scheduled for Plaintiff's arraignment on or about March 3, 2018 (First Opp'n 10; Second Opp'n 10), and Exhibit 6 to the SAC shows that counts were entered against Plaintiff on March 5, 2018 (SAC 81–82, Ex. 6). Two years (the statute of limitations here) after March 5, 2018 is March 5, 2020; Plaintiff filed the Complaint in this lawsuit on December 7, 2020.

Plaintiff does not deny that she filed this action more than two years after the detention hearing, but asserts two reasons why the statute of limitations has not expired for her claims against the County and S.W. Salazar: (1) delayed discovery and (2) continuing violations. (First Opp'n 27–31; Second Opp'n 30–34.)

Although Plaintiff characterizes the continuing violations argument as "tolling," it—as well as delayed discovery—are both issues of accrual.  *See Bird v. State*, 935 F.3d 738, 743–44 (9th Cir. 2019).

### 1. Delayed Discovery

Plaintiff argues that she did not receive S.W. Salazar's detention report until July 2019 as part of the official appellate record and was not aware of the basis for her claims until then.  (First Opp'n 27–29; Second Opp'n 30–32.)  However, this is not alleged in the SAC.  (*See generally* SAC.)  To invoke the delayed discovery rule, a "plaintiff whose complaint shows on its face that his claim would be barred without the benefit of the discovery rule must specifically plead facts to show (1) the time and manner of discovery and (2) the inability to have made earlier discovery despite reasonable diligence."  *Nguyen v. Nissan N. Am., Inc.*, 487 F. Supp. 3d 845, 856 (N.D. Cal. 2020) (citing *E-Fab, Inc. v. Accts., Inc. Servs.*, 153 Cal. App. 4th 1308, 1319 (2007)).  Here, there are no facts alleged in the SAC to support delayed accrual of Plaintiff's claims against S.W. Salazar and the County. (*See generally* SAC.)  However, as Plaintiff argues that she has facts that could support delayed accrual, Plaintiff should be given an opportunity to add these allegations to her pleading.

### 2. Continuing Violations

Plaintiff argues that the conspiratorial violations of her constitutional rights began with S.W. Salazar; were continued by S.W. Bateman, S.W. Nichols, S.W. Willey, and S.W. Blaylock; and did not conclude until S.W. Blaylock and S.W. Nichols falsely represented during a hearing (date unspecified) that the caregiver wanted to keep N.W.N. permanently.  (First Opp'n 30–31; Second Opp'n 32–34.) Plaintiff also argues that the DCFS has a "systematic policy of denying constitutionally protected rights."   (First Opp'n 31; Second Opp'n 34.)

The continuing violations doctrine is an exception to the discovery rule of accrual which provides that "when a defendant's conduct is part of a continuing

practice, an action is timely so long as the last act evidencing the continuing practice falls within the limitations period[.]" *Bird*, 935 F.3d at 746 (quoting *Tearpock-Martini v. Borough of Shickshinny*, 756 F.3d 232, 236 (3rd Cir. 2014)). Historically, the Ninth Circuit recognized two applications of the continuing violations doctrine: (1) "a series of related acts, one or more of which falls within the limitations period," also known as the "serial acts branch" of the doctrine; and (2) "the maintenance of a discriminatory system both before and during [the limitations] period," also known as the "systematic branch" of the doctrine. *Id*. (quoting *Gutowsky v. County of Placer*, 108 F.3d 256, 259 (9th Cir. 1997)). However, the Supreme Court limited the serial acts branch in *National Railroad Passenger Corp. v. Morgan*, 536 U.S. 101, 113 (2002), holding that "discrete discriminatory acts are not actionable if time barred, even when they are related to acts alleged in timely filed charges" because "[e]ach discrete discriminatory act starts a new clock for filing charges alleging that act." The Ninth Circuit has applied *Morgan* "to abrogate the systematic branch of the continuing violations doctrine as well." *Bird*, 935 F.3d at 747. The Ninth Circuit has confirmed that, after *Morgan*, "little remains of the continuing violations doctrine." *Id*. at 748.

Here, Plaintiff's claims against S.W. Salazar are based upon discrete acts, which Plaintiff attempts to connect to the discrete acts of the other social worker defendants through the serial acts branch. (*See generally* SAC; First Opp'n 30–31; Second Opp'n 32–34.) However, *Morgan* requires that "[e]ach discrete discriminatory act starts a new clock for filing charges alleging that act." *Morgan*, 536 U.S. at 113. The continuing violations doctrine does not apply to save Plaintiff's claims against S.W. Salazar. *See Bird*, 935 F.3d at 748 ("Except for a limited exception for hostile work environment claims—not at issue here—the serial acts branch is virtually non-existent.").

Plaintiff's claim against the County is based on an alleged policy or practice, and attempts to invoke the systematic branch of the continuing violations doctrine.

However, while the Ninth Circuit has "left room for the systematic branch to apply to class-wide pattern-or-practice claims," it has "consistently refused to apply the systematic branch to rescue individualized claims that are otherwise time-barred." *Bird*, 935 F.3d at 748.  For example, in *Lyons v. England*, 307 F.3d 1092, 1108 (9th Cir. 2002), the Ninth Circuit reasoned from *Morgan* that a plaintiff's "assertion that [a] series of discrete acts flows from a company-wide, or systematic, discriminatory practice will not succeed in establishing the employer's liability for acts occurring outside the limitations period."  *Lyons* explained that "[a] discriminatory practice, though it may extend over time and involve a series of related acts, remains divisible into a set of discrete acts, legal action on the basis of each of which must be brought within the statutory limitations period."  *Id*. at 1107.  Moreover, in *Cherosky v. Henderson*, 330 F.3d 1243, 1248 (9th Cir. 2003), the Ninth Circuit concluded that plaintiffs "cannot challenge conduct that occurred prior to the limitations period merely by alleging that the conduct was undertaken pursuant to a policy that was still in effect during the limitations period."  The continuing violations doctrine does not save Plaintiff's claims against the County.  *See, e.g., Lhevan v. City of Irvine*, No. SACV 21-1418-GW (AGR), 2021 U.S. Dist. LEXIS 215635, at *7–10 (C.D. Cal. Oct. 19, 2021) (holding that continuing violations doctrine could not save Section 1983 *Monell* claim where claims were based entirely on events occurring outside statute of limitations period).

### 3.   Equitable Tolling

Though not argued by Plaintiff, Court considers, *sua sponte*, whether Plaintiff is entitled to equitable tolling.  *See, e.g., Alegria v. County of Riverside*, No. ED CV 18-1989-DSF (SP), 2019 U.S. Dist. LEXIS 210287, at *7 (C.D. Cal. Oct. 2, 2019); *Roberts v. Riverside County*, No. ED CV 18-770-VBF (SP), 2019 U.S. Dist. LEXIS 81461, at *8 (C.D. Cal. Feb. 28, 2019).

In California, "[e]quitable tolling is a judge-made doctrine 'which operates independently of the literal wording of the Code of Civil Procedure' to suspend or

extend a statute of limitations as necessary to ensure fundamental practicality and fairness." *Lantzy v. Centex Homes*, 31 Cal. 4th 363, 370 (2003) (quoting *Addison v. State of California*, 21 Cal. 3d 313, 318–19 (1978)).  Under California law, a plaintiff must meet three conditions to equitably toll a statute of limitations: (1) timely notice to the defendant, (2) lack of prejudice to the defendant, and (3) reasonable and good faith conduct on the part of the plaintiff.  *Saint Francis Mem'l Hosp. v. State Dep't of Pub. Health*, 9 Cal. 5th 710, 724 (2020).  Application of the equitable tolling doctrine requires a balancing of the injustice to the plaintiff occasioned by the bar of his claim against the effect upon the important public interest or policy expressed by the limitations statute.  *Lantzy*, 31 Cal. 4th at 371.

Here, the SAC and attached Exhibits assert and show that Plaintiff made claims directly to the County and has been appealing the state court rulings.  (SAC 2, ¶¶ 71, 94; Exs. 7–8.)  "California policy 'favors relieving plaintiff from the bar of a limitations statute when, possessing several legal remedies he, reasonably and in good faith, pursues one designed to lessen the extent of his injuries or damage.'" *Lucchesi v. Bar-O Boys Ranch*, 353 F.3d 691, 696 (9th Cir. 2003) (quoting *Addison v. State*, 21 Cal.3d 313, 317 (1978)).  "The California Supreme Court has reasoned that the primary purpose of a limitations statute is to '(prevent) surprises through the revival of claims that have been allowed to slumber until evidence has been lost, memories have faded, and witnesses have disappeared.'" *Butler v. Nat'l Cmty. Renaissance of Cal.*, 766 F.3d 1191, 1204 (9th Cir. 2014) (quoting *Elkins v. Derby*, 12 Cal. 410, 417 (1974)).  "This primary purpose is 'normally satisfied when the defendant receives timely notification of the first of two proceedings.'" *Id.* (quoting *Elkins*, 12 Cal. at 420 n.3).

Equitable tolling is not briefed and the Court cannot conclude, based upon the SAC and its exhibits, that equitable tolling does not apply.  "When a motion to dismiss is based on the running of the statute of limitations, it can be granted only if the assertions of the complaint, read with the required liberality, would not permit

the plaintiff to prove that the statute was tolled." *Jablon v. Dean Witter & Co.,* 614 F.2d 677, 682 (9th Cir. 1980). "In fact, a complaint cannot be dismissed unless it appears beyond doubt that the plaintiff can prove no set of facts that would establish the timeliness of the claim." *Supermail Cargo, Inc. v. United States*, 68 F.3d 1204, 1207 (9th Cir. 1995). "Because the applicability of the equitable tolling doctrine often depends on matters outside the pleadings, it 'is not generally amenable to resolution on a Rule 12(b)(6) motion.'" *Id.* at 1206 (quoting *Cervantes v. City of San Diego,* 5 F.3d 1273, 1276 (9th Cir. 1993)). The County Motion and Employees Motion should be **DENIED WITHOUT PREJUDICE** on the issue of the statute of limitations.

### D.   Issue Preclusion

County Defendants assert that the dependency court actions support preclusion on the following issues: (1) whether the detention of the minor under an order of the dependency court was reasonable and necessary; (2) whether Plaintiff could not control the minor and the minor was at risk; and (3) whether the disposition order and removal of custody was reasonable and necessary. (County Mot. 10–14; Employees Mot. 10–11.) Plaintiff counters that issue preclusion does not apply because the issues were not identical, there was no decision as to those specific matters, there was no privity, and the parties were not the same. (First Opp'n 17–29; Second Opp'n 18–30.)

The United States Constitution provides that "Full Faith and Credit shall be given in each State to the public Acts, Records, and judicial Proceedings of every other State." U.S. Const. art. IV, § 1. "As implemented under 28 U.S.C. § 1978, federal courts must 'give to a state-court judgment the same preclusive effect as would be given that judgment under the law of the State in which the judgment was rendered.'" *Rodriguez v. City of San Jose*, 930 F.3d 1123, 1130 (9th Cir. 2019) (quoting *Migra v. Warren City Sch. Dist. Bd. of Educ.*, 465 U.S. 75, 81 (1984)). Preclusion "is intended to preserve the integrity of the judicial system, promote

judicial economy, and protect litigants from harassment by vexatious litigation. It rests upon the sound policy of limiting litigation by preventing a party who has had one fair adversary hearing on an issue from again drawing it into controversy and subjecting the other party to further expense in its reexamination." *Ayala v. Dawson*, 13 Cal. App. 5th 1319, 1325 (2017) (quoting *City of Oakland v. Oakland Police & Fire Ret. Sys.*, 224 Cal. App. 4th 210, 227–28 (2014) (internal quotation marks and citations omitted)).

In determining the preclusive effect of a state court judgment, federal courts follow the state's rules of preclusion. *White v. City of Pasadena*, 671 F.3d 918, 926 (9th Cir. 2012). The Court therefore looks to California law for its treatment of issue preclusion, also known as collateral estoppel. *See Rodriguez*, 930 F.3d at 1130. "Issue preclusion . . . bars successive litigation of an issue of fact or law actually litigated and resolved in a valid court determination essential to the prior judgment, even if the issue recurs in the context of a different claim." *White*, 671 F.3d at 926 (quoting *Taylor v. Sturgell*, 553 U.S. 880, 892 (2008)). In California, issue preclusion applies: "(1) after final adjudication (2) of an identical issue (3) actually litigated and necessarily decided in the first suit and (4) asserted against one who was a party in the first suit or one in privity with that party." *Hardwick v. County of Orange*, 980 F.3d 733, 740 (9th Cir. 2020) (quoting *DKN Holdings LLC v. Faerber*, 61 Cal. 4th 813, 825 (2015)). The party asserting preclusion bears the burden of establishing its requirements. *Patel v. Crown Diamonds*, 247 Cal. App. 4th 29, 40 (2016).

Plaintiff argues that the fourth prong (asserted against a party in the first lawsuit) is not satisfied because none of the Individual Defendants was in privity with the juvenile dependency case. (First Opp'n 25.) Issue preclusion, however, can be raised by one who was not a party or privy in the first lawsuit. *DKN Holdings*, 61 Cal. 4th at 824. The only person who has to be a party or in privity to the first lawsuit is the person against whom issue preclusion is asserted. *See*

*Hardwick*, 980 F.3d at 740.  As shown in Exhibit 6 to the SAC and the County's judicially-noticed Exhibit A, Plaintiff was a party to the underlying proceedings, thereby satisfying the fourth prong.  (SAC Ex. 6; County Ex. A.)

The County recognizes—and the Court agrees—that the record before the Court is insufficient for the Court to make a determination regarding the second prong (identical issues) and third prong (issues actually litigated and necessarily decided in the first suit).  (County Mot. 12–13.)  "The 'identical issue' requirement addresses whether 'identical factual allegations' are at stake in the two proceedings, not whether the ultimate issues or dispositions are the same." *Lucido v. Superior Court*, 51 Cal. 3d 335, 342 (1990) (citing *People v. Sims*, 32 Cal. 3d 468, 485 (1982)).  "For purposes of collateral estoppel, an issue was actually litigated in a prior proceeding if it was properly raised, submitted for determination, and determined in that proceeding." *Hernandez v. City of Pomona*, 46 Cal. 4th 501, 511 (2009).  "In considering whether these criteria have been met, courts look carefully at the entire record from the prior proceeding, including the pleadings, the evidence, the jury instructions, and any special jury findings or verdicts." *Id*.  Here, County Defendants provide only a single court of appeal decision (Exhibit A), which is insufficient to make a determination on issue preclusion.

Furthermore, County Defendants fail to brief why their three issues, if subject to issue preclusion, would lead to dismissal of all of Plaintiff's claims against them, as they contend.  (*See generally* County Mot.; Employees Mot.)  As the California Supreme Court has explained, "issue preclusion does not bar entire causes of action. Instead, it prevents relitigation of previously decided issues." *DKN Holdings*, 61 Cal. 4th at 824.

The County Motion and Employees Motion to dismiss on the basis of issue preclusion should be **DENIED WITHOUT PREJUDICE**.

### E.     Rule 8 Notice Requirements

S.W. Blaylock, S.W. Willey, and S.W. Nichols move for dismissal pursuant

to Rule 8, arguing that: (1) the SAC impermissibly clumps the allegations against them together and does not sufficiently apprise each Defendant of their alleged acts or omissions; and (2) the SAC does not sufficiently allege a conspiracy. (Employees Mot. 13—14.)

To satisfy Rule 8(a)(2)'s requirement that a pleading contain "a short and plain statement of the claim showing that the pleader is entitled to relief," a plaintiff must allege the basis of his or her claims against each defendant. *Leakas v. Monterey Bay Military Hous., LLC*, No. 22-cv-01422-VKD, 2022 U.S. Dist. LEXIS 106889, at *11 (N.D. Cal. June 15, 2022). "As a general rule, when a pleading fails to allege what role each Defendant played in the alleged harm, this makes it exceedingly difficult, if not impossible, for individual Defendants to respond to Plaintiffs' allegations." *Adobe Sys. v. Blue Source Grp. Inc*., 125 F. Supp. 3d 945, 964 (N.D. Cal. 2015) (internal quotation marks omitted) (quoting *In re iPhone Application Litig.*, No. 11-MD-02250-LHK, 2011 U.S. Dist. LEXIS 106865, 2011 WL 4403963, at *8 (N.D. Cal. Sept. 20, 2011)). "Accordingly, a complaint which lump[s] together . . . multiple defendants in one broad allegation fails to satisfy [the] notice requirement of Rule 8(a)(2)." *Id*. (internal quotation marks omitted) (alterations in original) (quoting *Gen-Probe, Inc. v. Amoco Corp*., 926 F. Supp. 948, 961 (S.D. Cal. 1996)).

The Court agrees that the SAC contains numerous allegations where these and other Defendants are clumped together impermissibly. Specifically mentioned in the Employees Motion, the Court finds that the allegation that S.W. Blaylock, S.W. Bateman, and S.W. Willey "filed a Jurisdiction report with the court which restates, reiterates, and perpetuates the lies and critical omissions previously stated in the detention report" (SAC ¶ 97) violates Rule 8 because it does not detail each Defendant's specific act or omission with respect to the jurisdiction report.

In addition, the SAC violates Rule 8 because it often provides vague accusations of Defendants' misrepresentations, including the following: S.W.

34

Blaylock, S.W. Bateman, and S.W. Willey filed a Jurisdiction report with the court which "restates, reiterates, and perpetuates the lies and critical omissions previously stated in the detention report" (SAC ¶ 97); S.W. Salazar tried to force Plaintiff to sign a Voluntary Plan with "fabrications" and "inaccuracies" (*id*. ¶ 59); S.W. reported Plaintiff to the Sheriff's Department on "bogus charges" (*id*. ¶ 61); S.W. Blaylock altered "certain documents" (SAC ¶ 68); Attorney Weiss allowed N.W.N. to testify untruthfully at the adjudication hearing (*id*. ¶ 70); and S.W. Willey altered or fabricated information in the social worker reports (*id*. ¶ 68).

The Court also agrees that the allegations of a conspiracy are wholly conclusory and insufficient. (*See, e.g.*, SAC ¶¶ 21, 108, 109, 141(g).) The Court previously advised Plaintiff that "[a] mere allegation of conspiracy without factual specificity is insufficient." *Karim-Panahi v. L.A. Police Dep't*, 839 F.2d 621, 626 (9th Cir. 1988). (*See* Order Dismiss. Compl. 8.)

Finally, the SAC violates Rule 8 because it fails to specify which claims are asserted against which specific Defendant(s).

The District Court should **GRANT** the Employees Motion to dismiss the claims against S.W. Blaylock, S.W. Bateman, and S.W. Willey pursuant to Rule 8.

### F.     Federal Section 1983 Claims

Section "1983 provides a cause of action against '[e]very person who, under color of any statute . . . of any State . . . subjects, or causes to be subjected, any citizen . . . to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws . . . .'" *Wyatt v. Cole*, 504 U.S. 158, 161 (1992) (alterations in original) (quoting 42 U.S.C. § 1983). Section 1983 "'is not itself a source of substantive rights,' but merely provides 'a method for vindicating federal rights elsewhere conferred.'" *Graham v. Connor*, 490 U.S. 386, 393–94 (1989) (quoting *Baker v. McCollan*, 443 U.S. 137, 144 n.3 (1979)). "The purpose of §1983 is to deter state actors from using the badge of their authority to deprive individuals of their federally guaranteed rights and to provide relief to victims if such deterrence

35

fails." *Wyatt*, 504 U.S. at 161.  "To state a claim under § 1983, a plaintiff must allege the violation of a right secured by the Constitution and laws of the United States, and must show that the alleged deprivation was committed by a person acting under color of state law." *West v. Atkins*, 487 U.S. 42, 48 (1988).

>        1.   Claims Against Individual Defendants

>             a.   *Supervisory Liability*

Liability under Section 1983 cannot be established solely on a theory of *respondeat superior* based on the unconstitutional conduct of subordinates.  *See Iqbal*, 556 U.S. at 676 ("Government officials may not be held liable for the unconstitutional conduct of their subordinates under a theory of *respondeat superior*.").  "The inquiry into causation must be individualized and focus on the duties and responsibilities of each individual defendant whose acts or omissions are alleged to have caused a constitutional deprivation." *Leer v. Murphy*, 844 F.2d 628, 633 (9th Cir. 1998).  The requisite causal connection can be established when a person (1) "does an affirmative act, participates in another's affirmative acts, or omits to perform an act which he is legally required to do that causes the deprivation"; or (2) "set[s] in motion a series of acts by others which the actor knows or reasonably should know would cause others to inflict the constitutional injury." *Lacey v. Maricopa County*, 693 F.3d 896, 915 (9th Cir. 2012) (en banc) (quoting *Johnson v. Duffy*, 588 F.2d 740, 743–44 (9th Cir. 1978)).  "Even if a supervisory official is not directly involved in the allegedly unconstitutional conduct, '[a] supervisor can be liable in his individual capacity for his own culpable action or inaction in the training, supervision, or control of his subordinates; for his acquiescence in the constitutional deprivation; or for conduct that showed a reckless or callous indifference to the rights of others.'" *Keates*, 883 F.3d at 1243 (alteration in original) (quoting *Starr v. Baca*, 652 F.3d 1202, 1208 (9th Cir. 2011)).

Here, the SAC alleges that: S.W. Blaylock and S.W. Willey provided permission and ratification of S.W. Salazar's criminal referral of Plaintiff to the

Sheriff's Department (SAC ¶ 61); because S.W. Salazar was S.W. Bateman's supervisor, S.W. Bateman told S.W. Blaylock that Plaintiff would be bringing a civil action against S.W. Salazar (*id*. ¶ 63); S.W. Salazar ratified S.W. Bateman's order depriving Plaintiff of the right to be present at N.W.N.'s psychiatric panel at UCLA (*id*. ¶ 67); after S.W. Blaylock and S.W. Nichols were advised that Plaintiff had filed a claim against them with the Los Angeles County Board of Supervisors, S.W. Nichols, with S.W. Blaylock's ratification and permission, sought to file additional charges against Plaintiff, five months after the matter was resolved, "'if it would help' fight the claim against S.W. Nichols (*id*. ¶. 94).

The only allegations in the SAC about Director Cagle are that he "acquiesced, ratified, and approved all actions herein" because "[h]is signature can be found on virtually every document provided by DCFS employees." (SAC ¶ 69.) Specifically, the SAC alleges that the jurisdiction report was filed with Director Cagle's approval (*id*. ¶ 97), and that the warrant was filed with Director Cagle's "ratification and acquiescence" (*id*. ¶ 104).

These facts are insufficient to state a claim for supervisory liability against S.W. Blaylock, S.W. Willey, and Director Cagle. Rather, there are only conclusions and speculation that they ratified and acquiesced in their subordinates' actions. There are no factual allegations to support the reasonable inference that S.W. Blaylock, S.W. Willey, and Director Cagle were culpable for inaction in supervision or control of their subordinates, acquiesced in Plaintiff's alleged constitutional deprivation, or showed a reckless or callous indifference to Plaintiff's rights. *See Keates*, 883 F.3d at 1243. Plaintiff's supervisory liability claims against S.W. Blaylock, S.W. Willey, and Director Cagle should be **DISMISSED**.

b.   *Fourteenth Amendment Substantive Due Process and First Amendment - Familial Association*

The Fourteenth Amendment's Due Process Clause prohibits the government from depriving "any person of life, liberty, or property without due process of law."

U.S. Const. amend. XIV § 1.  The Due Process Clause "includes a substantive component that 'provides heightened protection against government interference with certain fundamental rights and liberty interests.'"  *Troxel v. Granville*, 530 U.S. 57, 65 (2000) (quoting *Washington v. Glucksberg*, 521 U.S. 702, 720 (1997)).  "[O]ne such fundamental liberty interest protected by the Due Process Clause is 'the fundamental right of parents to make decisions concerning the care, custody, and control of their children.'"  *Parents for Privacy v. Barr*, 949 F.3d 1210, 1229 (9th Cir. 2020) (quoting *Troxel*, 521 U.S. at 66).  Parents may assert Fourteenth Amendment substantive due process claims if they are deprived of their liberty interest in companionship and society of their child through official conduct.  *Lemire v. Cal. Dep't of Corr. & Rehab.*, 726 F.3d 1062, 1075 (9th Cir. 2013).

"Only official conduct that 'shocks the conscience' is cognizable as a due process violation."  *Porter v. Osborn,* 546 F.3d 1131, 1137 (9th Cir. 2008).  Whether conduct "shocks the conscience" depends on the facts of the case.  *See County of Sacramento v. Lewis*, 523 U.S. 833, 847–50 (1998) ("[T]he measure of what is conscience-shocking is no calibrated yard stick[.]").  The Supreme Court has described actions that "shock the conscience" as "arbitrary," *Collins v. City of Harker Heights*, 503 U.S. 115, 128 (1992), "brutal," "offensive," *Breithaupt v. Abram*, 352 U.S. 432, 435 (1957), "egregious," "intended to injure in some way unjustifiable by any government interest," *Lewis*, 523 U.S. at 846, 849, and violative of the "decencies of civilized conduct," *Rochin v. California*, 342 U.S. 165, 173 (1952).  Negligence does not shock the conscience.  *See Lewis*, 523 U.S. at 849.  "Where, as here, circumstances afford reasonable time for deliberation before acting, we consider conduct to be conscience-shocking if it was taken with deliberate indifference toward a plaintiff's constitutional rights."  *Sylvia Landfield Tr. v. City of Los Angeles*, 729 F.3d 1189, 1195 (9th Cir. 2013).

"The First Amendment also protects 'family relationships, that presuppose deep attachments and commitments to the necessarily few other individuals with

1   whom one shares not only a special community of thoughts, experiences, and beliefs
2   but also distinctively personal aspects of one's life.'"  *Keates v. Koile*, 883 F.3d
3   1228, 1236 (9th Cir. 2018) (quoting *Lee v. City of Los Angeles*, 250 F.3d 668, 685
4   (9th Cir. 2001)).  The right of intimate association is analyzed in the same manner
5   regardless of whether it is characterized under the First Amendment or Fourteenth
6   Amendment.  *Mann v. City of Sacramento*, 748 F. App'x 112,115 (9th Cir. 2018);
7   *accord Estate of Osuna v. County of Stanislaus*, 392 F. Supp. 3d 1162, 1177 (E.D.
8   Cal. 2019); *see also, e.g., Estate of Pol v. City of Stockton*, No. 2:21-cv-00788 WBS
9   AC, 2021 U.S. Dist. LEXIS 229521, at *9 (E.D. Cal. Nov. 30, 2021) (collecting
10  cases where district courts have evaluated First Amendment familial association
11  claims under the Fourteenth Amendment's "shock the conscience" standard).

12                          i.     *Attorney Vartanian*

13          County Employees assert that all of the claims against Attorney Vartanian are
14  for her cross-examination and argument during the dependency case.  (Employees
15  Mot. 14.)  As such, County Employees move to dismiss: (1) the Section 1983
16  claims against Attorney Vartanian on the basis of the First Amendment right to
17  petition; and (2) the intentional infliction of emotional distress claims on the basis
18  of California Civil Code section 47(b) ("section 47(b)"), which makes privileged a
19  "publication or broadcast" made as part of a "judicial proceeding."  (*Id*. at 14–15.)

20          Plaintiff clarifies that her claims against Attorney Vartanian are not for her
21  statements made in court, but for her statement—conveyed to Plaintiff through S.W.
22  Blaylock and Nichols—that Plaintiff had to attend the parenting classes in person
23  rather than online, despite Plaintiff's request for an ADA accommodation.  (First
24  Opp'n 33–35.)  This is not apparent from the SAC, and thus violates Rule 8.  *See*
25  *Twombly*, 550 U.S. at 555 (explaining that Rule 8 requires plaintiff to give
26  defendants fair notice of the claim and the grounds upon which it rests).  Plaintiff's
27  claims against Attorney Vartanian should be **DISMISSED** for violating Rule 8.

28          In any event, this lone allegation against Attorney Vartanian—that her

insistence, relayed to Plaintiff by S.W. Blaylock and S.W. Nichols, that Plaintiff attend parenting classes in person, despite Plaintiff's request for an ADA accommodation to attend online—does not shock the conscience.  *See A.G. v. Paradise Valley Unified Sch. Dist. No. 69*, 815 F.3d 1195, 1209 (9th Cir. 2016) (affirming district court's finding that conduct attributable to school district—including failure to research whether interventions were appropriate and failure to provide necessary accommodations—was not "so outrageous in character and so extreme in degree, as to go beyond all possible bounds of decency"); *K.T. v. Pittsburg Unified Sch. Dist*., 219 F. Supp. 3d 970, 980 (N.D. Cal. 2016) (finding allegations of "[g]rabbing, slapping, and kicking a child with special needs" to be "deplorable," but not "so depraved" as to shock the conscience).  Plaintiff's familial association claim against Attorney Vartanian should be **DISMISSED**.

In addition, in light of Plaintiff's narrowing of her claim against Attorney Vartanian, Attorney Vartanian's motion to dismiss the claims against her pursuant to section 47(b) and the First Amendment should be **DENIED** as moot.

ii.    *Dr. Wong*

Though he has not appeared in the lawsuit, pursuant to its obligation under Section 1915(e)(2)(B)(ii), the Court concludes that the SAC fails to state a familial association claim against Dr. Wong.  The only allegations in the SAC about Dr. Wong are the following: Dr. Wong diagnosed N.W.N. with oppositional defiant disorder and disruptive mood dysregulation disorder (SAC ¶ 29); he was "bullied" by S.W. Salazar and Kedren's Vasquez and Torres into keeping N.W.N. in the hospital without a legitimate psychiatric reason (*id*. ¶ 46); when Plaintiff spoke with Dr. Wong about her concerns regarding N.W.N.'s release, Dr. Wong told Plaintiff to "talk to the social workers" (*id*.); Dr. Wong resigned his position immediately following N.W.N.'s detention (*id*. ¶ 51); Dr. Wong agreed with Plaintiff that "there was something not quite adding up with N.W.N." (*id*.); and Dr. Wong signed a letter stating that N.W.N. could benefit from being placed in a residential treatment

40

facility (*id*.).  These allegations—which do not even rise to the level of negligence —do not come close to shocking the conscience.  *See Lewis*, 523 U.S. at 849 ("[L]iability for negligently inflicted harm is categorically beneath the constitutional due process threshold.").  Furthermore, there are no allegations connecting any of Dr. Wong's actions and the violation of Plaintiff's constitutional rights.  *See Johnson v. Duffy*, 588 F.2d 740, 743–44 (9th Cir. 1978) (explaining that Section 1983 requires a "causal connection" between a person and the constitutional deprivation).  Plaintiff's familial association claim against Dr. Wong should be **DISMISSED**.

c.    *Fourteenth Amendment - Procedural Due Process*

"A procedural due process claim has two elements: deprivation of a constitutionally protected liberty or property interest and denial of adequate procedural protection."  *Krainski v. State ex rel. Bd. of Regents*, 616 F.3d 963, 970 (9th Cir. 2010).  "Parents and children have a well-elaborated constitutional right to live together without governmental interference.  That right is an essential liberty interest protected by the Fourteenth Amendment's guarantee that parents and children will not be separated by the state without due process of law except in an emergency."  *Wallis v. Spencer*, 202 F.3d 1126, 1136 (9th Cir. 2000) (citations omitted).  "While the right is a fundamental liberty interest, officials may interfere with the right if they provide the parents with fundamentally fair procedures[.]"  *Keates*, 883 F.3d at 1236 (citations and quotation marks omitted).

The SAC does not specify the Defendants against whom Plaintiff asserts a Fourteenth Amendment procedural due process claim.  (*See* SAC ¶¶ 133–138.) However, the SAC does specify that the procedural due process claim is based upon false allegations in the detention report, which the juvenile court relied upon to issue the removal warrant.  (*Id*. ¶¶ 134–135.)  The SAC also asserts that unspecified Defendants made false representations to the juvenile court that were knowing, intentional, and in reckless disregard for the truth, and were in furtherance of

41

removing N.W.N. from Plaintiff's custody.  (*Id.* ¶ 137.)

There are no allegations in the SAC that Dr. Wong and Attorney Vartanian made any misrepresentations to the juvenile court.  (*See generally* SAC.)  To the extent that the procedural due process claim is brought against Dr. Wong and Attorney Vartanian, it should be **DISMISSED**.

> d.    *Fourth Amendment - Wrongful Search and Seizure*

The Court previously advised Plaintiff that she does not have standing to assert a Fourth Amendment claim for N.W.N.'s search or seizure.  (*See* Order Dismiss. FAC 4.)  "Fourth Amendment rights are personal and may not be asserted vicariously."  *Mabe v. San Bernardino Cnty.*, *Dep't of Pub. Soc. Servs.*, 237 F.3d 1101, 1111 (9th Cir. 2001) (citing *United States v. Taketa*, 923 F.2d 665, 670 (9th Cir. 1991)).  Thus, "[a parent] has no standing to claim a violation of [a child's] Fourth Amendment rights."  *Id.*; *see also Osborne v. County of Riverside*, 385 F. Supp. 2d 1048, 1052–53 (C.D. Cal. 2005) (holding that aunt and grandmother, who sued county and child protective services employees for removal of child from their home, lacked standing to bring a Fourth Amendment claim alleging unreasonable seizure of child).  The District Court should **DISMISS** the second claim (Fourth Amendment) with prejudice.  Though not entirely clear, based on the allegations in the SAC, the Fourth Amendment claim appears to be the only claim against Kedren and Kedren's Vasquez and Torres.

> 2.    Claims Against the County

>> a.    *Kedren*

The County asserts that it is not vicariously responsible for Kedren, a private hospital.  (County Mot. 14.)  Plaintiff concedes that Kedren is not part of the County, but that Kedren is a state actor because it receives 100% of its funding from the County, and that a summons should issue for Kedren.  (Second Opp'n 35.)

The County's judicially-noticed Exhibit B shows that Kedren is a private hospital.  (County Ex. B.)  There is no vicarious liability under Section 1983.  *See*

*Iqbal*, 556 U.S. at 676; *Monell v. Dep't of Soc. Servs.*, 436 U.S. 658, 691 (1978). The County Motion to dismiss the claim against Kedren should be **GRANTED**.

As to Plaintiff's request that a summons should issue against Kedren, a party cannot seek affirmative relief by way of an opposition brief. *See, e.g., Smith v. Premiere Valet Servs.*, No. 2:19-cv-09888-CJC-MAA, 2020 U.S. Dist. LEXIS 228465, at *42 (C.D. Cal. Aug. 4, 2020) ("As a threshold matter, Defendant may not seek affirmative relief through its Opposition. Courts in this and other districts have concluded that a request for affirmative relief is not proper when raised for the first time in an opposition."); *Interworks Unlimited, Inc. v. Digit. Gadgets, LLC*, No. CV 17-04983 TJX (KSx), 2019 U.S. Dist. LEXIS 167149, at *3–4 (C.D. Cal. June 11, 2019) (stating that a party responding to a motion "cannot seek affirmative relief by way of an opposition brief"). Even if it were proper for Plaintiff to seek the issuance of a summons against Kedren in its Opposition—which it is not—the SAC does not assert any claims directly against Kedren and also does not sufficiently state any claims against Kedren. Plaintiff's request that summons be issued against Kedren should be **DENIED**.

### b.     *Fourteenth Amendment - Monell Claim*

The County argues that Plaintiff does not clearly state any policy or practice that caused her injuries. (County Mot. 15–16.) In response, Plaintiff argues that the SAC claims that the County has a policy, custom, or practice of "Foster Care Panic" where it allows fraudulent charges of child abuse or neglect to be instituted against parents. (Second Opp'n 23.) The Court agrees with Plaintiff.

Local governments and municipalities can be liable under Section 1983 only where a plaintiff's "injury was inflicted pursuant to the local government's policy, regulation, custom, or usage." *Chew v. Gates*, 27 F.3d 1432, 1444 (9th Cir. 1994) (citing *Monell*, 436 U.S. at 690–91. The local government policy "need only cause a constitutional violation; it need not be unconstitutional per se." *Jackson v. Gates*, 975 F.2d 648, 654 (9th Cir. 1992). Local government policy "'causes' an injury

where it is the 'moving force' behind the constitutional violation, or where 'the [local government] itself is the wrongdoer.'"  *Chew*, 27 F.3d at 1444 (citations omitted).  There must be a "direct causal link between a municipal policy or custom and the alleged constitutional deprivation."  *City of Canton v. Harris*, 489 U.S. 378, 385 (1989).  "[A] municipality cannot be held liable *solely* because it employs a tortfeasor—or in other words, a municipality cannot be held liable under Section 1983 on a *respondeat superior* theory."  *Monell*, 436 U.S. at 691.

Here, the SAC alleges that the County deploys a custom, policy, or practice of fraudulently charging parents with child abuse or neglect where none exists, because it has been audited and discovered that multiple children have died due to the County's failure to protect children.  (SAC ¶¶ 98–99.)  As a result, the County has adopted a policy of "Foster Care Panic" where it takes a majority of the children it comes into contact with out of fear.  (*Id.* ¶ 99.)  The SAC alleges that as a result of this policy, custom, or practice: false information was provided in the detention report to justify N.W.N's removal; relevant details were omitted from the detention report; and a warrant was based on fabricated, false information, and unsupported allegations.  (*Id.* ¶ 127.)  These allegations are sufficient to require a response to Plaintiff's *Monell* claim.  The County Motion to dismiss the *Monell* claim against the County should be **DENIED**.

### G.   State Law Claim for Intentional Infliction of Emotional Distress

The County Employees move to dismiss the fifth claim for negligent infliction of emotional distress, arguing first that the state tort of negligent infliction of emotional distress does not exist, and then that the SAC supports neither the "bystander" or "direct victim" of recovery for a claim of negligent infliction of emotional distress.  (Employees Mot. 15.)  County Employees' Motion to dismiss the fifth claim is fundamentally flawed, as the SAC asserts a claim for *intentional* infliction of emotional distress, not *negligent* infliction of emotional distress.  (*See* SAC ¶¶ 140–144.)  As none of their grounds for dismissal are relevant, the

1  Employee Motion to dismiss the intentional infliction of emotional distress claim

2  should be **DENIED**.

3    California recognizes a cause of action for intentional infliction of emotional

4  distress. *Lawler v. Montblanc N. Am., LLC*, 704 F.3d 1235, 1245 (9th Cir. 2013).

5  To state a claim for intentional infliction of emotional distress, a plaintiff must

6  allege "(1) extreme and outrageous conduct by the defendant with the intention of

7  causing, or reckless disregard of the probability of causing, emotional distress;

8  (2) the plaintiff's suffering severe or extreme emotional distress; and (3) actual and

9  proximate causation of the emotional distress by the defendant's outrageous

10  conduct." *Hughes v. Pair*, 46 Cal. 4th 1035, 1050 (2009) (quoting *Potter v.*

11  *Firestone Tire & Rubber Co.*, 6 Cal. 4th 965, 1001 (1993)).  A defendant's conduct

12  is 'outrageous' when it is so 'extreme as to exceed all bounds of that usually

13  tolerated in a civilized community.'"  *Id*. at 1050–51 (quoting *Potter*, 6 Cal. 4th at

14  1001).  "The defendant's conduct must be 'intended to inflict injury or engaged in

15  with the realization that injury will result.'"  *Id*. at 1051 (quoting *Potter*, 6 Cal. 4th

16  at 1001).  "Severe emotional distress" has a "high bar," and means "emotional

17  distress of such substantial quality or enduring quality that no reasonable [person]

18  in civilized society should be expected to endure it."  *Id.* (alteration in original)

19  (quoting *Potter*, 6 Cal. 4th at 1004).  Because there is no bright line rule for when

20  conduct qualifies as outrageous, it is usually a question of fact for a jury to decide.

21  *Yun Hee So v. Sook Ja Shin*, 212 Cal. App. 4th 652, 671–72 (2013).  A court may

22  dismiss such claims as a matter of law if the conduct alleged is insufficiently

23  outrageous, particularly where the conduct alleged amounts to "mere insults,

24  indignities, threats, annoyances, petty oppressions, or other trivialities." *Hughes v.*

25  *Pair*, 46 Cal. 4th 1035, 1051 (2009) (quotations and citations omitted).

26    Pursuant to its obligations under Section 1915(e)(2)(B)(ii), the Court

27  concludes that the allegations against Attorney Vartanian and Dr. Wong are

28  insufficient as a matter of law to state a claim for intentional infliction of emotional

distress.  For the same reasons that the  allegations pertaining to Attorney Vartanian and Dr. Wong do not rise to the level of "shocking the conscience," they do not rise to the level of "outrageousness" required for an intentional infliction of emotional distress claim.  The intentional infliction of emotional distress claims against Attorney Vartanian and Dr. Wong should be **DISMISSED**.

### H.     Leave to Amend

Under Rule 15(a), leave to amend "should be freely granted when justice so requires," bearing in mind that "the underlying purpose of Rule 15 . . . [is] to facilitate decision on the merits, rather than on the pleadings or technicalities." *Lopez v. Smith*, 203 F.3d 1122, 1127 (9th Cir. 2000) (en banc) (citations omitted). A court "may exercise its discretion to deny leave to amend due to 'undue delay, bad faith or dilatory motive on part of the movant, repeated failure to cure deficiencies by amendments previously allowed, undue prejudice to the opposing party. . . , [and]  futility of amendment.'"  *Carvalho v. Equifax Info. Servs., LLC*, 629 F.3d 876, 892 (9th Cir. 2010) (alterations in original) (quoting *Foman v. Davis*, 371 U.S. 178, 182 (1962)).  "These factors, however, are not given equal weight. Futility of amendment can, by itself, justify the denial of . . . leave to amend." *U.S. ex rel. Insoon Lee v. SmithKline Beecham, Inc.*, 245 F.3d 1048, 1052 (9th Cir. 2001) (internal citations and quotation marks omitted).  "[L]eave to amend should be denied as futile 'only if no set of facts can be proved under the amendment to the pleadings that would constitute a valid and sufficient claim or defense.'"  *Barahona v. Union Pac. R.R.*, 881 F.3d 1122, 1134 (9th Cir. 2018) (quoting *Sweaney v. Ada County*, 119 F.3d 1385, 1393 (9th Cir. 1997)).

Because *pro se* litigants, such as Plaintiff, "must be given leave to amend his or her complaint unless it is 'absolutely clear that the deficiencies of the complaint could not be cured by amendment,'" Plaintiff should be granted leave to file an amended complaint.  *See Sands v. Lewis*, 886 F.2d 1166, 1168 (9th Cir. 1989) (quoting *Karim-Panahi*, 839 F.2d at 623).  The amended complaint must comply

with Rule 8, as described above.  Plaintiff must provide each Defendant fair notice of the claims asserted against him or her, including by clearly labeling which claim is asserted against which Defendant.  In addition, Plaintiff must clearly state the factual allegations upon which each such claims are based, including by not clumping Defendants when possible.  Plaintiff should omit any Defendant for whom Plaintiff cannot provide specific factual allegations of how such Defendant violated Plaintiff's rights.

## VI.     RECOMMENDATION

Consistent with the foregoing, **IT IS RECOMMENDED** that the District Court issue an Order:

1.     **ACCEPTING** this Report and Recommendation;

2.     **OVERRULING** Plaintiff's law-of-the-case-doctrine objection;

3.     **GRANTING IN PART AND DENYING IN PART** the County RJN as follows:

   a.     Granting RJN No. 2 (Exhibit A) and RJN No. 5 (Exhibit B); and

   b.     Denying RJN Nos. 1, 3 and 4.

4.     **GRANTING IN PART AND DENYING IN PART** the County Motion as follows:

   a.     Denying without prejudice on the statute of limitations;

   b.     Denying without prejudice on issue preclusion;

   c.     Granting dismissal of  Kedren without prejudice and denying Plaintiff's request that summons be issued against Kedren;

   d.     Denying without prejudice for failure to state a *Monell* claim;

5.     **GRANTING IN PART AND DENYING IN PART** the Employees Motion as follows:

   a.     Denying without prejudice on the *Rooker-Feldman* doctrine;

   b.     Denying without prejudice on the claims against S.W. Salazar based on the statute of limitations;

c.      Denying without prejudice on issue preclusion;

d.      Granting the motion to dismiss the claims against S.W. Blaylock, S.W. Nichols, and S.W. Willey for failure to comply with Rule 8, and also dismissing the supervisory liability claims against S.W. Blaylock and S.W. Willey for failure to state a claim, all without prejudice;

e.      Dismissing without prejudice the claims against Attorney Vartanian for violating Rule 8 and failure to state a claim, and denying as moot Attorney Vartanian's defenses pursuant to the First Amendment and section 47(b);

f.      Denying without prejudice on the intentional infliction of emotional distress claim;

6.      **DISMISSING** without prejudice Director Cagle and Dr. Wong for failure to state any claims against them;

7.      **DISMISSING WITH PREJUDICE** the Fourth Amendment search and seizure claim;

8.      **GRANTING** Plaintiff leave to file an amended complaint, but not adding any new claims or defendants, and not including the Fourth Amendment search and seizure claim, which is dismissed with prejudice.

DATED:  August 24, 2022                          _____
                                                                      MARIA A. AUDERO
                                                         UNITED STATES MAGISTRATE JUDGE

48